U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - LAKE CHARLES

MAR 23 2009

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | |
|---|---|
| RODNEY W. SCHAMERHORN | CIVIL ACTION NO. 01-914 |
| versus | JUDGE TRIMBLE |
| U. S. DEPARTMENT OF THE ARMY, ET AL | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court are two (2) pending motions in the above captioned case: a motion to dismiss plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(1) and (6)[1] filed by defendants, the United States Department of the Army and the United States of America ("Government," "Defendants") and a motion for transfer of any contract claims to the U.S. Court of Federal Claims filed by plaintiff Rodney W. Schamerhorn ("Schamerhorn," "Plaintiff").[2] For the reasons discussed herein this court finds that the government's motion should be GRANTED. The court also finds that plaintiff's motion should be DENIED.

I. BACKGROUND

*Relevant Facts*

Plaintiff is a resident of Leesville, Louisiana and is the owner of Schamerhorn Backhoe

---

[1] R. 24.

[2] R. 26.

1

and Trucking.[3] Plaintiff's business consists of construction, demolition, dirt sales and hauling and, to that end, plaintiff owns a 17-acre landfill in Vernon Parish, Louisiana.[4]

In May of 1997, plaintiff entered into a requirements contract with the United States Army for the demolition of buildings at Fort Polk, Louisiana.[5] This contract was renewed in 1998.[6]

Plaintiff alleges that he received a call from the Directorate of Contracting for the Headquarters of the Joint Readiness Training Center at Fort Polk constituting a "delivery order" for the demolition of Building 8031.[7] Plaintiff alleges that, during the course of this telephone call, a representative of the Directorate of Contracting assured him that Building 8031 had been abated of all asbestos.[8] Plaintiff alleges that he demolished Building 8031 on or about February 3, 1999 and placed the debris in his landfill.[9] Plaintiff alleges that on or about November 22, 1999, he was informed by the Louisiana Department of Environmental Quality ("DEQ") that asbestos was detected in his landfill and that, based on those findings, the DEQ issued citations

---

[3] R. 8 at ¶ 2.

[4] Id.

[5] R. 26-2 (Letter of May 22, 1997 from U.S. Army Directorate of Contracting stating "this is a requirements contract and no services shall be performed until you receive a delivery order issued by this office either telephonically or in writing.")

[6] R. 8 at ¶ 3; R. 9 at ¶ 3.

[7] Id. at ¶¶ 3 - 10.

[8] Id.

[9] Id. at ¶¶ 10 - 13.

2

for "multiple environmental violations."[10] Thereafter, plaintiff claims he was informed by "a representative of [t]he [g]overnment" that Building 8031 had not been abated of asbestos before plaintiff demolished it.[11]

Plaintiff filed an administrative claim with the Department of the Army on February 24, 2000 and amended this claim on May 16, 2000.[12] Plaintiff's claim was denied on August 7, 2001.[13] Plaintiff filed the instant suit on May 16, 2001. Plaintiff's complaint alleges entitlement to money damages for various personal injuries, property damage, loss of use of property and loss of income allegedly caused by the government's failure to disclose the presence of asbestos in Building 8031.[14] Plaintiff's complaint also requests money judgment to cover "costs of remediation imposed by law."[15]

Defendants notified the Judicial Panel on Multidistrict Litigation ("JPML") that plaintiff's suit may constitute a "tag-along" action to cases already transferred pursuant to an opinion and order issued by JPML in 1991.[16] Pursuant to an order issued by the Panel on April 4, 2002, plaintiff's case was transferred to the Eastern District of Pennsylvania.[17] By order dated

---

[10] R. 8 at ¶ 14.

[11] Id. at ¶ 16.

[12] R. 24-5, 24-6.

[13] R. 8 at ¶ 17, R. 9 at ¶ 17.

[14] R. 8 at ¶ 39.

[15] Id.

[16] MDL-875, In Re Asbestos Products Liability Litigation (No. VI), 771 F. Supp. 415 (1991).

[17] R. 16.

3

July 14, 2008,[18] Judge James T. Giles dismissed plaintiff's personal injury claims without prejudice and the plaintiff's remaining claims were transferred back to this court in August of 2008.[19] The parties filed the instant motions after participating in a scheduling conference before Magistrate Judge Kay on February 2, 2009.[20]

### *Applicable Standards*

Federal courts are courts of limited jurisdiction, possessing only that authority given to them expressly by the Constitution or statutes of the United States.[21] For that reason, a cause of action is presumed to lie outside the scope of federal jurisdiction and the burden of proving federal jurisdiction belongs to the party seeking the federal forum.[22]

Fed. R. Civ. P. 12(b)(1) provides the mechanism by which a party may challenge the existence of federal subject matter jurisdiction. A party's jurisdictional challenge may be either facial or factual.[23] A Rule 12(b)(1) motion challenging jurisdiction on the face of the complaint confines the scope of the court's review to the pleadings and attachments thereto and requires the court to view all well-pled allegations as true for the purpose of that motion.[24] In this way,

---

[18]R. 24-4.

[19]R. 19.

[20]R. 23.

[21]Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994) (internal citations omitted).

[22]Id.

[23]Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. 1981) (internal citations omitted).

[24]Id.

4

such a motion is treated similarly to a motion under Fed. R. Civ. P. 12(b)(6).[25] If, however, a party's Rule 12(b)(1) motion is based on matters outside the scope of the pleadings, the challenge is considered factual and the court may look beyond the pleadings and make findings of fact in order to determine the existence of its own jurisdiction.[26]

When presented with a factual challenge to its jurisdiction in any case, the court is not required to assume the truth of plaintiff's well-pled factual allegations and is not required to refrain from dismissal of the claim(s) simply because the parties dispute one or more material facts.[27] If the court finds that it lacks subject matter jurisdiction over any claim or claims, it must grant the motion to dismiss to the extent that any such claim or claims must be dismissed.

28 U.S.C. § 1361 provides that a court finding that it lacks jurisdiction over a civil action

"...shall, if it is in the interest of justice, transfer such action
or appeal to any other such court in which the action or appeal
could have been brought at the time it was filed..."

Fed. R. Civ. P. 12(b)(6) permits dismissal of a complaint when it fails to state a claim upon which relief may be granted. When considering a Rule 12(b)(6) motion, the court must accept the factual allegations of the complaint as true for the purposes of that motion and must resolve any ambiguities or doubts regarding the sufficiency of the claim in favor of plaintiff.[28] "In order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not

---

[25] Id.

[26] Id. at 413.

[27] Id.

[28] Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996); Fernandez-Montez v. Allied Pilots Ass'n., 987 F.2d 278, 284 (5th Cir. 1993).

5

mere conclusory allegations..."[29] "Legal conclusions masquerading as factual conclusions will not suffice."[30] "[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery...or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial."[31] Dismissal is appropriate when the court finds that an affirmative defense or other bar to recovery is applicable on the face of the complaint and its attachments.[32]

## II. ANALYSIS

### *Contract Claims*

The Government's motion to dismiss asserts that this court should dismiss all contract claims by plaintiff because it lacks subject matter jurisdiction over such claims by operation of the Contract Disputes Act ("CDA")[33] and/or the Tucker Act.[34] The Government alleges that plaintiff's claims arise out of contract between plaintiff and the United States and, as such, these statutes establish the exclusive jurisdiction over plaintiff's contract claims in the United States Court of Federal Claims ("Court of Claims"). More specifically, the Government argues that the requirements contract between plaintiff and the Department of the Army constitutes an

---

[29] Guidry v. Bank of LaPlace, 954 F.2d 278, 281 (5th Cir. 1992).

[30] Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

[31] Campbell v. City of San Antonio, 43 F.3d 973, 975 (5th Cir. 1995).

[32] Garrett v. Commonwealth Mortg. Corp. of America, 938 F.2d 591, 594 (5th Cir. 1991) (internal citations omitted).

[33] 41 U.S.C. §§ 601-13.

[34] 28 U.S.C. §§ 1346(a)(2), 1491.

> "express or implied contract...entered into by an
> executive agency for...the procurement of property...
> services...construction, alteration, repair or maintenance
> of real property; or...disposal of personal property"

as contemplated in Section 602(a) of the CDA and, accordingly, plaintiff's claims arising from this contract are subject to the exclusive jurisdiction of the Court of Claims by virtue of Section 609(a)(1), which provides for judicial review of decisions by a contracting officer in that court.

Alternatively, the Government argues that plaintiff's contract claims lie within the exclusive jurisdiction of the Court of Claims pursuant to Section 1346(a)(2) of the Tucker Act which states, in part

> "(a) The district courts shall have original jurisdiction, concurrent
> with the United States Claims Court...of:
>
> \*      \*      \*
>
> (2) Any other civil action or claim against the United States, not
> exceeding $10,000 in amount, founded...upon any express or
> implied contract with the United States."

The Government points out that plaintiff's claims, as evidenced by his original and amended claims forms filed with the Army which value plaintiff's damages at $16 million.[35]

Plaintiff argues that the Government erroneously classifies its claims as "contract claims," asserting that his claims are actually tort claims for personal damages which have little or nothing to do with his underlying contract with the United States. Plaintiff argues that his tort claims are within this court's jurisdiction by virtue of the Federal Tort Claims Act ("FTCA") and not subject to the jurisdictional limitations of the CDA or Tucker Act as alleged by the

---

[35]R. 24-5, 24-6.

7

Government. Plaintiff cites Salter v. United States,[36] a case decided by an Alabama federal district court, as an example of the prudence of distinguishing between claims which are truly "contract claims" and those which are substantially unrelated to an underlying government contract. Plaintiff argues that the Fifth Circuit's approach in cases such as Davis v. United States[37] is too narrow, relegating every claim between parties who are also parties to government contracts to the Court of Claims and essentially denying access to federal district court under the FTCA.[38] Plaintiff vaguely argues that the telephone delivery order he received in 1999, during which the alleged misrepresentation concerning asbestos abatement occurred, constitutes an act or omission separate from the contract and, therefore, his damages do not truly "arise from the contract."[39] Plaintiff also argues that the damages he seeks are personal damages, as opposed to financial damages more traditional to contract disputes.[40]

The court is cognizant of the need to expand its analysis beyond merely asking "is there a government contract between these parties" in order to avoid wholesale foreclosure of federal tort claims against the United States. In the case at bar, however, even the expansive view requested by plaintiff cannot justify the conclusion that his claims are tort claims unrelated to the contract in question. Plaintiff's amended complaint is full of references to damages "arising

---

[36] 880 F. Supp. 1524 (M.D. Ala. 1995).

[37] 961 F.2d 53 (5th Cir. 1991).

[38] R. 28 at pp. 5-6.

[39] R. 26 at pp. 3-4.

[40] R. 28 at pp. 5-7.

from the contract between Plaintiff and the United States,"[41] including the allegation that

> "[t]he Government's breach of its contract with Plaintiff, by violation of its affirmative duty to ensure that any such structure Plaintiff was called upon to demolish pursuant to his contract was free from asbestos, was the sole direct and proximate cause of exposure to the person and property of the Plaintiff to unreasonably dangerous, hazardous, and potentially deadly substances, namely asbestos and [asbestos-containing materials]."[42]

Plaintiff's motion for transfer also argues that the harms claimed by plaintiff befell him while performing demolition services as part of his contract with the United States Department of the Army which expressly obligated the Government to "indicate on individual delivery orders that the building(s) have been cleared of asbestos."[43]

The court rejects plaintiff's argument that because he alleges wrongdoing by individual government employees, we are constrained to view his claims as in tort. The telephone delivery order received by plaintiff in 1999, during which the alleged act and/or omission occurred, was contemplated by the requirements contract and, in fact, a necessary prerequisite to plaintiff's demolition of Building 8031.

The facts before us reveal that the damages claimed by plaintiff are wholly related to the government's alleged breach of a duty originating in the contract at issue. Accordingly, we disagree with plaintiff's argument that he has demonstrated claims which are not "inextricably

---

[41] R. 8 at ¶ 1.

[42] R. 8 at ¶ 11.

[43] R. 26 at p. 1, quoting Section C.5.1.1 of the contract between plaintiff and Government.

9

intertwined" with his government contract.[44]

Given our finding that plaintiff asserts claims for damages arising from an alleged breach of contract by the Government, we also find that we lack subject matter jurisdiction to hear these claims pursuant to both the CDA and the Tucker Act. As argued by the Government, plaintiff's claims lie within the exclusive jurisdiction of the Court of Claims because they arise from a contract with the United States and because they contemplate damages in excess of $10,000. The Government's Rule 12(b)(1) motion to dismiss plaintiff's contract claims will be granted.

### *CERCLA Claims*

The Government's motion also seeks dismissal of plaintiff's claims under the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA")[45] on the basis that plaintiff has failed to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6).[46] The Government avers that plaintiff's complaint fails to allege the necessary facts which would entitle him to assert a claim under CERCLA and that any purported claims under that statute should be dismissed.

"CERCLA provides a private cause of action where a release or threatened release of a hazardous substance causes response costs to be incurred."[47] In order to establish a prima facie case for liability under CERCLA, plaintiff must demonstrate

"(1) that the site in question is a facility as defined in § 9601(9);

---

[44]R. 28 at p. 6.

[45]42 U.S.C. § 9601, et seq.

[46]R. 24-2 at pp. 12-16.

[47]Tanglewood East Homeowners v. Charles-Thomas, Inc., 849 F.2d 1568, 1572 (1988).

10

(2) that the defendant is a responsible person under § 9607(a);
(3) that a release or a threatened release of a hazardous substance has occurred; and (4) that the release or threatened release has caused plaintiff to incur response costs."[48]

The Government asserts that plaintiff's complaint fails to demonstrate or even allege that any remedial work has actually been done at the Schamerhorn landfill or that any such work is both necessary and consistent with the National Contingency Plan as required for recovery of remedial costs.[49]

Plaintiff argues that he has adequately pled facts which, when taken as true and construed in his favor, establish a valid claim under CERCLA. Specifically, plaintiff argues that the pleadings demonstrate that the only real issue is whether any response costs have actually been incurred. Plaintiff asserts that the land is clearly his and that he has unquestionably lost value in the land.[50] Plaintiff points to the estimate for environmental clean-up attached to his memorandum in opposition, totaling $11,276,877 as evidence of damages sustained.[51]

The court has reviewed plaintiff's amended complaint and finds that plaintiff has failed to state a cognizable claim for relief under CERCLA because, as argued by the Government, plaintiff fails to allege that plaintiff has actually incurred response costs. Additionally, plaintiff fails to allege that any such remedial efforts actually comply with the National Contingency Plan. Moreover, we find that plaintiff confuses the alleged drop in the value of his property with

---

[48] Amoco Oil Co. v. Borden, Inc., 889 F.2d 664, 668 (5th Cir. 1990).

[49] 42 U.S.C. § 9607(a)(4)(B); Id. at 668.

[50] R. 28 at pp. 8-9.

[51] R. 28-4.

11

reimbursable "response costs." Accordingly, we find that the Government's motion to dismiss plaintiff's CERCLA claims should be granted and all such purported claims should be dismissed.

### *Transfer of Contract Claims to U.S. Court of Federal Claims*

Plaintiff's motion argues that, if this court finds that his claims are in the nature of contract claims, rather than tort claims, we must transfer them to the Court of Claims pursuant to 28 U.S.C. § 1631 which provides that when a court finds that it lacks jurisdiction over a civil action,

> the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

The Government opposes transfer as requested by plaintiff on the basis that any such transfer of plaintiff's contract claims against it would be futile and, therefore, not "in the interest of justice." Specifically, the Government points to 28 U.S.C. § 1500, which states

> [t]he United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

The Government argues that the Court of Claims is barred from hearing plaintiff's present claims because, by operation of Section 1631, plaintiff's suit is considered, at transfer to have been filed in the Court of Claims on May 16, 2001, the date plaintiff filed suit in this district court. The Government further argues that, by operation of Section 1500, claims over

which the Court of Claims had no jurisdiction were joined with plaintiff's contract claims, which prevents the Court of Claims from hearing any transferred claims in this case. Citing United States v. County of Cook, Ill,[52] and its progeny, the Government asserts that, even though plaintiff's non-contract claims have been dismissed, the Court of Claims still lacks jurisdiction over transferred claims because they arise from the same operative facts as the originally asserted non-contract claims.

Plaintiff disputes the Government's statutory argument, asserting that if this court finds that it lacks subject matter jurisdiction over his claims, we are thereafter also lacking any authority to do anything more than transfer the case pursuant to Section 1631. Plaintiff also argues that the Court of Claims, itself, is the only proper court to determine whether it lacks subject matter jurisdiction over plaintiff's remaining claims and that a denial of transfer by this court amounts to an infringement on the jurisdiction of the Court of Claims.

The court has examined the case law regarding this issue and finds that the weight of authority and the statutory language are in agreement with the Government's argument. 28 U.S.C. § 1631 requires transfer by this court only when such transfer is in the "interest of justice." In this case, it is clear that, even construing plaintiff's claims in the manner most benefitting him, his former personal injury claims and his present contract claims arise from "substantially the same" operative facts.[53] Although plaintiff's personal injury and CERCLA claims are now dismissed, a determination of the jurisdiction of the Court of Claims view the

---

[52] 170 F.3d 1084, 1090-91 (Fed. Cir. 1999).

[53] Cooke v. United States, 77 Fed. Cl. 173 (2007), citing Harbuck v. United States, 58 Fed. Cl. 266, 269 (2003).

complaint as it was on the day of filing.[54] This is true even when other claims are removed by amendment, rather than dismissal.[55] The great multitude of cases interpreting Section 1500 concerning the transfer of claims illustrates that transfer would, thus, be futile. The protracted nature of this litigation is unfortunate and, finding that our denial of transfer does not deprive plaintiff of any remedy reasonably available to him under law, we must not prolong its rightful end. Accordingly, plaintiff's motion for transfer will be denied.

## III. CONCLUSION

On the basis of the facts, law and argument before us, this court finds that it lacks subject matter jurisdiction over plaintiff's remaining claims, which we find to be contract claims, contrary to plaintiff's assertions. The court also finds that plaintiff has failed to state a cognizable claim for relief under CERCLA, having neglected to demonstrate or allege the actual incurrence of "response costs" as mandated by that statute. Finally, the court finds that transfer of plaintiff's remaining contract claims to the Court of Claims is not warranted under 28 U.S.C. 1631 because such transfer would be futile and would most certainly result in the dismissal of those claims by that court, as they are based on the same operative facts as other claims asserted by plaintiff, depriving the Court of Claims of jurisdiction by operation of 28 U.S.C. 1500.

Accordingly, the court finds that the Government's motion to dismiss shall be granted in its entirety and plaintiff's motion for transfer of claims shall be denied. All remaining claims by plaintiff shall therefore be dismissed with prejudice. These findings shall be reflected in a judgement of dismissal issued by the court on this day.

---

[54]Id. at 176, citing Harbuck at 268.

[55]Id. citing Keene Corp. v. United States, 508 U.S. 200, 207 (1993).

14

Lake Charles, Louisiana  
March 23, 2009

_____
JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE